**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13916

Non-Argument Calendar

_____

BABETTE FRIEDMAN,

*Plaintiff-Appellant,*

*versus*

TOWN OF PEMBROKE PARK,
  a Florida Municipal Corporation,
COMMISSIONER,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cv-60241-DSL

_____

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON,
Circuit Judges.

PER CURIAM:

Babette Friedman appeals the dismissal of her complaint of retaliation for exercising her right to report official misconduct. She alleged that the Town of Pembroke Park and Geoffrey Jacobs violated her rights under the First Amendment and that the Town violated her rights under the Florida Whistle-blower's Act. *See* 42 U.S.C. § 1983; Fla. Stat. § 112.3187. The district court dismissed her complaint for failure to state a claim for relief. Fed. R. Civ. P. 12(b)(6). No reversible error occurred. We affirm.

## I. BACKGROUND

This action stems from alleged violations of a civility code that the Town adopted in 2020. The code requires elected and appointed officials to treat each other, staff, and the public with civility. It also prohibits personal attacks, disruption of staff, and public criticism of employees.

In August 2022, Friedman began serving as the Director of Human Resources for the Town. From August 2022 to September 2023, Jacobs served as a commissioner and mayor for the Town. Friedman and Jacobs became embroiled in a conflict in March 2023 after two employees reported to Friedman that an official, who was Jacobs's friend, had sexually harassed them. Jacobs requested the identities of the employees and details of their complaints. Friedman refused to disclose the information for confidentiality reasons.

Jacobs renewed his request at a commission meeting on March 22, 2023. He obtained the identity of one of the employees the day after the meeting and began to harass her. Friedman reported Jacobs's conduct to the Town's manager and warned the

manager that Jacobs's continued harassment "might compel her and the complainants to lodge a formal complaint against him for creating a hostile work environment and engaging in retaliation."

The Town's manager warned Jacobs to refrain from threatening or harassing conduct, but Jacobs dismissed the warning. Because Jacobs was undeterred, Friedman decided to "blow the whistle" on his conduct. In response to an inquiry from the mayor at the April 12, 2023, commission meeting, Friedman read from a prepared statement that described Jacob's persistent mistreatment of staff and implored the commission to protect employees from Jacobs.

Jacobs retaliated by filing a complaint against Friedman on May 1, 2023, and calling her a "Nazi" during a food drive on May 6, 2023. Friedman warned the Town manager that she would take legal action if the harassment continued. Undeterred, Jacobs called for Friedman's termination during a commission meeting on May 27, 2023, and demeaned her on social media on June 4, 2023. After Friedman complained to the Town's manager on June 21, 2023, about Jacobs's continued bullying and intimidation, Jacobs filed a complaint against Friedman with the Office of the Inspector General of Florida. Friedman resigned on August 2, 2023, effective September 2, 2023.

After Friedman sued the Town and Jacobs in state court, they removed the action to the district court. Friedman amended her complaint and alleged that the Town and Jacobs retaliated against her in violation of the First Amendment. *See* 42 U.S.C.

§ 1983. She also alleged that the Town retaliated against her in violation of the Florida Whistle-blower's Act. *See* Fla. Stat. § 112.3187. The Town and Jacobs moved to dismiss Friedman's complaint for failure to state a claim.

The district court dismissed the action. It ruled that Friedman's claim of retaliation under the First Amendment failed because her speech at the April 12, 2023, commission meeting was not on a matter of public concern. And it ruled that her claim of retaliation under the Florida Whistle-blower's Act failed because she did not suffer a constructive discharge as she continued to be employed by the Town for a month after she resigned.

## II. STANDARD OF REVIEW

We review the dismissal of a complaint for failure to state a claim *de novo*. *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1277 (11th Cir. 2025). We accept the allegations of the complaint as true and draw all reasonable inferences in Friedman's favor. *Id.*

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that Friedman failed to state a claim of retaliation against the Town and Jacobs under the First Amendment, U.S. CONST. AMEND. I, because she did not speak on a matter of public concern. Second, we explain that she failed to state a claim of retaliation against the Town under the Florida Whistle-blower's Act, Fla. Stat. § 112.3187, because she did not suffer an adverse employment action.

### A. *Friedman Did Not Speak on a Matter of Public Concern.*

Whether the First Amendment protects the speech of a public employee depends on "'whether the employee spoke as a citizen on a matter of public concern.'" *Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Friedman argues that she spoke as a citizen on a matter of public concern at the April 12, 2023, commission meeting. We disagree.

Even if we assume that Friedman spoke as a citizen at the meeting, her claim of retaliation fails because her speech was not on a matter of public concern. To "fall within the realm of public concern," Friedman's speech had to relate to a "matter of political, social, or other concern to the community," a determination that turns on "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 1162 (internal quotation marks omitted). Because speech will "rarely be entirely private or entirely public," we consider whether the "main thrust" of the speech is "public in nature or private," along with the employee's "motivation in speaking." *Id.* (internal quotation marks omitted). Although the First Amendment "safeguard[s] a public employee's right, *as a citizen*, to participate in discussions involving public affairs," it does not "empower [the employee] to constitutionalize [an] employee grievance." *Id.* at 1160 (internal quotation marks omitted).

Friedman's speech at the April 12, 2023, commission meeting was not on a matter of public concern. She responded to an

inquiry from the mayor, spoke on behalf of "current and past employees who d[id] not have a voice [at the meeting]," and urged the commission to "put a stop" to Jacobs's "toxic and abusive behavior," including his attempt to intimidate and retaliate against her and other employees. Although Friedman mentioned a need to "raise the level of professionalism" to "retain and keep good employees" and "change the reputation of [the] town,"—a matter that touches upon public concern—it was not the main thrust of her speech. *See id.* at 1162. Instead, she expressed an employee grievance, as she recounted internal personnel issues and urged the commission to investigate Jacobs for alleged misconduct. *Id.* at 1160.

### B.  Friedman Did Not Suffer an Adverse Employment Action.

To state a claim of retaliation under the Florida Whistle-blower's Act, Friedman had to allege that she "engaged in statutorily protected expression" and "suffered an adverse employment action" with "some causal relation between the two events." *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023). Friedman argues that her complaints to the Town's manager and statement at the April 12, 2023, commission meeting were statutorily protected expressions and that her resignation amounted to a constructive discharge. We disagree.

Even if we assume that Friedman's speech was statutorily protected expression, her claim of retaliation fails because her resignation was not a constructive discharge. To state a claim for constructive discharge, Friedman had to allege that her working conditions were "so intolerable that a reasonable person in her position

would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (internal quotation marks omitted). A constructive discharge requires "pervasive conduct." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

Friedman's resignation was not the result of a constructive discharge. She complained to the Town's manager about Jacobs's bullying and intimidation on June 21, 2023. Yet she continued working for the Town for over a month before she resigned on August 2, 2023. And even then, she continued to work until September 2, 2023.

Friedman argues that her complaint supports two favorable inferences of constructive discharge—that she gave notice to protect her professional reputation, in accordance with the Town's personnel handbook, and that she reasonably believed her resignation would end Jacobs's retaliation. We disagree. Apart from her failure to make these arguments in the district court, the facts alleged in Friedman's complaint do not suggest that Jacobs's conduct was pervasive and that Friedman's working conditions became "so intolerable that a reasonable person in her position would have been compelled to resign." *Id.*; *Poole*, 129 F.3d at 553.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Friedman's complaint.